# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ERACLIO BERNAL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-392-R |
| ) | |
| **TK STANLEY, INC., et al.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| **TK STANLEY, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **CHAPARRAL ENERGY, LLC.,** ) | |
| ) | |
| Defendant/Third-party ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **FEDERAL INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| Third-party Defendant. ) | |

## **O R D E R**

This matter is before the Court on cross-motions for summary judgment, filed by Defendant and third-party Plaintiff, Chaparral Energy, L.L.C. ("Chaparral"), and third-party Defendant Federal Insurance Company ("Federal"). Each motion drew a response in opposition and the parties filed replies in support of their respective positions. Having considered the parties' filings, the Court finds as follows.

Chaparral filed a third-party complaint against Federal asserting breach of contract as a result of Federal's refusal to defend Chaparral in the portion of this action filed by T.K. Stanley, wherein T.K. Stanley alleged it was entitled to a defense and indemnity from Chaparral with regard to injuries sustained by Eraclio Bernal, an employee of T.K. Stanley's subcontractor, Precision Drilling. There is no dispute that Federal had issued a CGL policy and an Umbrella policy to Chaparral Energy, LLC. Federal contends, however, it was not obligated to defend Chaparral because the allegations in the underlying complaint combined with information obtained by Federal with regard to T.K. Stanley's allegations, indicated there was no coverage or potential coverage for T.K. Stanley's claims. The facts of this case are largely undisputed and will be discussed herein.

Under Oklahoma law, an insurance company has a duty to defend its insured when it ascertains facts giving rise to the *potential* for liability under the policy. *First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 928 P.2d 298, 303 (Okla. 1996)(emphasis added). The duty to defend is broader than, the duty to indemnify, but nevertheless, an insurer's obligation is not unlimited. *Id*. The duty to defend is measured by the types of risks covered by the policy as well as by the reasonable expectations of the insured. *Id*. "The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *Id.* at 303–04.

Generally,

2

> [I]t does not matter that additional claims are alleged that fall outside the policy's general coverage or within its exclusionary provisions. If the claims asserted against the insured could rationally be said to fall within the coverage of the policy, whatever may later prove to be the limits of the insurer's responsibility to pay, the insurer has a duty to defend.

Appleman, Insurance Law and Practice § 100.3 (2d ed.1996). Additionally, the insurer's obligation is considered from the perspective of facts it knew at the time the insured requested a defense, not from later-acquired facts, such as this Court's decision to grant summary judgment to Chaparral in the action by T.K. Stanley. *See Turley*, 928 P.2d at 314, n. 19. Finally, the insured bears the burden of proving that a loss triggers coverage under an insurance policy. *Pittman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir.2000).

On May 13, 2013, T.K. Stanley filed its Complaint against Chaparral, which included the following allegations:

> At the time of the accident giving rise to Eraclio Bernal's injuries, TKS was working for Chaparral.
> TKS worked for Chaparral per the terms of the Master Services Agreement ("MSA") drafted by Chaparral.
> TKS provided rig moving services to Chaparral, including at the subject well site, and sent invoices to Chaparral for such work. Chaparral paid TKS the amounts reflected by such invoices.
> The terms of the MSA require Chaparral to defend and indemnify TKS from the claims of Precision Drilling Company, L.P.'s employee, Eraclio Bernal.
> Chaparral drafted the MSA, which is the only agreement between TKS and Chaparral, and thus the terms of the agreement must be construed against Chaparral.
> TKS accepted the terms of the MSA through performing services. Chaparral paid TKS for its services without objecting to any lack of agreement.
> As a result of Chaparral's breach of the MSA, TKS has incurred damages . . . .

Complaint filed by T.K. Stanley, ¶¶ 8, 10, 11, 12, 15, 16. In that portion of this litigation, Chaparral denied the existence of an Master Services Agreement and argued it was not required to defend or indemnify T.K. Stanley. T.K. Stanley argued in return that it first started work on behalf of Chaparral in 2006, and that in conjunction therewith, it was provided a Master Services Agreement, which it executed, although it was unable to provide a copy thereof. There was also a Master Services Agreement sent by Chaparral to T.K. Stanley in March 2007, which T.K. Stanley redlined and returned, however, the agreement was never signed by either party. Throughout this time, and until Mr. Bernal's injuries, T.K. Stanley continued to work for Chaparral and Chaparral paid T.K. Stanley for the work it completed. T.K. Stanley argued that Chaparral's repeated contracting with T.K. Stanley resulted in ratification of the Master Services Agreement, which the Court construed as an argument that the contract was accepted by T.K. Stanley's performance through the years, as alleged in paragraph 16 of the Complaint.

The question presented at this juncture is whether, in light of the terms of the Policy and the facts known to Federal when the defense was requested and denied, was there the potential of a covered claim. If so, Federal owed Chaparral a duty to defend against T.K. Stanley's allegations. The provisions of the policy at issue include the following:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
> imposed by law; or
> assumed in an **insured contract**;
> for **bodily injury** or **property damage** caused by an occurrence to which this coverage applies.

4

Policy, p. 3.

> Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such suit is false, fraudulent or groundless.
>
> ***
>
> We have no duty to defend any person or organization against any **suit** seeking damages to which this insurance does not apply.

Policy, p. 4.

> This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.
> This exclusion does not apply to the liability for damages:
> - that such **insured** would have in the absence of such contract or agreement; or
> - assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage**, to which this insurance applies, occurs after the execution of such contract or agreement.

Policy, p. 10. "**Insured Contract** " means

> 6. any other contract or agreement pertaining to your business . . . in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization.

Policy, p. 24.

> In denying the request for defense, on July 15, 2013, Federal stated:
>
> You have provided Federal with a copy of the relevant Master Services Agreement between Chaparral and TKS and confirmed with us that Chaparral never entered into the MSA with TKS until after the accident occurred.
>
> ***
>
> Under the primary commercial general liability policy, it is Federal's position that while the insuring agreement is potentially triggered given that TKS seeks to hold Chaparral liable for the **bodily injury** of Bernal it claims Chaparral assumed in a **insured contract**, the Contracts exclusion precludes any possibility of coverage. This exclusion precludes coverage for **bodily**

5

> **injury** an insured assumes in an **insured contract** unless the insured's liability falls within either of two exceptions. Under the first exception, if an insured would be liable for damages in the absence of the contract, the exclusion does not apply. Since TKS's sole claim is for breach of contract under the indemnity provision of the subject MSA and no other theories of recovery are sought in the Complaint, this exception does not apply. The second exception to the exclusion would apply if the damages are assumed by an insured in an **insured contract** provided the **bodily injury** occurs after the execution of the contract. Because TKS did not execute the contract until, at the earliest, March 22, 2011, and the injury occurred February 15, 2011, the second exception to the Contract exclusion would not apply. It is important to note that Section 19.0 of the MSAA signifies that the contract will be considered executed upon the date shown by the parties' signatures. It does not appear that Chaparral ever executed the contract but that TKS executed the contract after the injury occurred.

Motion for Summary Judgment, Attachment B.[1]

The Court concludes, as argued by Chaparral, that Federal's interpretation of its own policy provisions was too narrow. The Court acknowledges the Contracts exclusion, and concurs with Defendant that the only potential avoidance of the exclusion is via the exception thereto. However, the exception to the exclusion for a contractual agreement to indemnify did not require that the insured contract be in writing. Rather, the exclusion expressly provided that it could be either a contract or agreement, written or oral. Indeed, T.K. Stanley argued in support of its request for indemnification from Chaparral that the Master Services Agreement had been incorporated into the parties' relationship by virtue of Chaparral's decision to utilize T.K. Stanley's services on multiple occasions after 2006. Accordingly, the

---

[1] The initial communication from Federal to Chaparral regarding the claim was via letter dated May 31, 2013, wherein Federal indicated receipt of the claim and the existence of "significant coverage issues." Chaparral Motion for Summary Judgment, Attachment 2A. It declined to defend during the pendency of its investigation. *Id.* On August 26, 2013, coverage counsel sent Chaparral a letter denying a defense for similar reasons, as did a September 11, 2013 letter.

6

Court concludes that the absence of allegations or facts regarding a written contract signed by both T.K. Stanley and Chaparral was not dispositive of Federal's duty to defend Chaparral at the time the defense was requested.[2]

Furthermore, Oklahoma law does not mandate contract formation be in any particular manner, which is suggested by T.K. Stanley's allegations against Chaparral that Chaparral agreed to indemnify T.K. Stanley by virtue of the series of jobs completed by T.K. Stanley for Chaparral after the 2006 initiation of their relationship. T.K. Stanley offered more than a single theory of recovery as to how the Master Services Agreement came to be effective prior to the February 11, 2011 accident. Because, as noted above, the duty to defend is broader than the duty to indemnify, the Court finds that the allegations in the petition filed by TKS against Chaparral were sufficient to give rise to the potential for a covered claim, so as to create a duty to defend in this action. "[T]he initial burden to request a defense is on the insured, once that request is receive the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage. The duty to defend is triggered by the facts reasonably available at the time the defense is demanded, not by the outcome of the lawsuit." *Automax Hyundai South, L.L.C. v. Zurich American Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013)(internal citations omitted)(citing *Turley*, 928 P.2d at 303-305).

---

[2] In support of its motion for summary judgment Federal argues the Court should utilize the Oklahoma statutory definition of executed as set forth in Okla. Stat. tit.15 § 177, which provides that "[a]n executed contract is one, the object of which is fully performed. All others are executory." Federal argues that unless in writing, a contract is only executed if fully performed. The Policy, however, does not reference any statute for a definition of execution, nor does it provide a definition. The Court therefore, will not assume that term execution in the Policy is limited to the Oklahoma statutory definition.

7

It appears from the Court's review of the evidence, that Federal determined the only contractual basis upon which T.K. Stanley sought to recover from Chaparral was via a written Master Services Agreement. As noted, however, this argument ignores the language of the policy and of T.K. Stanley's allegations, which were that Chaparral and it had either a written Master Services Agreement, or an oral contract or a contract accepted by performance. The Court hereby rejects Federal's contention that absent a signed agreement pre-dating Plaintiff Bernal's injuries, it could not have been required to defend Chaparral under the Policy.

Finally, although the Policy limited Federal's obligation to defend, excepting suits "seeking damages to which Federal's insurance does not apply[,]" it undertook the obligation to defend Chaparral against false or groundless claims, which the Court concludes included the claims pressed against Chaparral by T.K. Stanley. "[A]n insurer is not obligated to defend a groundless suit when it would not be liable under the policy for any recovery that could possibly be obtained therein." *Maryland Cas. Co. v. Willsey*, 380 P.2d 254, 258 (Okla. 1963). "If there is any doubt as to the matter, it must be resolved in favor of the insured." *Id.* The Court finds that Federal could not as a matter of law determine based on the facts it knew at the time the defense was requested that it could not possibly be liable for any recovery T.K. Stanley might be able to achieve against Chaparral.

Accordingly, for the reasons set forth herein, the Court finds that Chaparral is entitled to summary judgment in its favor against Federal and its motion is therefore GRANTED (Doc. No. 96), and correspondingly, Federal's motion for summary judgment (Doc. No. 97)

is denied. The parties are hereby ordered to inform the Court within five days regarding how they intend to proceed with the issue of whether the defense costs incurred by Chaparral were reasonable and any remaining issues regarding damages.

    IT IS SO ORDERED this 16th day of October, 2014.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE